*In the Southern District of Texas*

~~IN THE COURT OF APPEALS~~
~~FOR THE FIRST DISTRIC of TEXAS~~ *ER*

Number _____

Reference no. 12-DCV-197806

In Re: Eric Brown
Petitioner

United States Courts
Southern District of Texas
F I L E D

NOV 2 0 2024

Nathan Ochsner, Clerk of Court

Vs.

THE DISTRICT COURT OF 387TH JUDICIAL DISTRICT COURT
FORT BEND COUNTY TEXAS

PETITION FOR A WRIT OF MANDAMUS
Federal Rules of Appellate Procedure, Rule 21

1. Eric Brown petitions this Court to compel the lower Court to perform the non-discretionary, administrative function of vacating a void judgment and sentence in case number 12-DCV-197806, for the DISTRICT COURT OF 387TH JUDICIAL DISTRICT FORT BEND COUNTY TEXAS.

## Brief in support

2. Eric Brown, father of Aerial Brown, relying on relevant and material common law authorities moved this Court to vacate the Orders, rulings, and determinations of Hon. Eric Andel, which based on relators who were competent, qualified expert witnesses damaged Aerial Brown both in matters of personal health but also damaging Aerial Brown in her rights.

3. Opposing counsel had notice and opportunity to respond: See attached copy of the motion as well as verification that counsel received the motion

3. Opposing Counsel's failure or refusal to dispute the law cited or the facts cited warrants this Court ratifying the proposed Order attached or a materially similar Order drawn on this Court's own art.

Prepared and submitted by: Eric Brown

6507 Grapevine Bend Manvel, TX 77578

281-914-6976

Vigilant.Brown@Gmail.com

IN THE COURT OF APPEALS FOR THE FIRST DISTRIC of TEXAS

Number _____

TRIAL COURT CAUSE NO. 12-DCV-197,806

In THE INTEREST OF AERIEL BROWN

## Order

Today this Court considers Eric Brown's Motion to vacate the orders, rulings, and determinations of Honorable ERIC ANDELL and rules:

## Findings of fact

1.Rosalind and Eric Brown, parents of Aerial Brown, were respondents in a State of Texas action allegedly in the interest of Aerial Brown.

2.During the proceedings Judge Eric Andell made rulings and determinations which Rosalind and Eric Brown deemed were violative of their rights as parents which were also, the Brown's relying on advice of medical professionals were unwise and ill-considered.

3.Belatedly, the Brown's, by exercising ordinary diligence, discovered that Eric Andell had presumed authority to adjudicate the matters presented to this Court without prior taking and subscribing to oaths required by Texas law.

4.The case was closed without addressing the damages which resulted from the coram non judice proceedings.

Conclusions of law

(1) The record not verifying that Eric Andel! had taken and subscribed to the required oaths means that no valid judicial offer was task with litigation of the State's claims or the counter-claims of Rosalind and Eric Brown.

(2) Numerous rulings by the Texas Court of Criminal Appeals and opinions by the State Attorney General have consistently upheld that rulings and actions by judges who have failed to take the Oath of Office are void; accordingly, the orders, rulings, and determinations of Eric Andell are void.

(3) One oft-cited Court of Criminal Appeals case, French v. State, overturned the rulings of a temporarily appointed municipal judge in Hurst, Judge R.A. Hargrave, because he failed to take his Oath of Office before ruling over cases following his appointment; accordingly, including but not necessarily limited to, the following orders, rulings, and determinations of Eric Andell are facially void: Ordering chemotherapy to start on Ariel Brown as verified on the Original Record May 4th, 2012, Coincidently, in effect, ordering radiation as verified dozens of times on the Original Record in re May 4TH 2012, Ratified the impairment of parental rights as verified on the Original

Record May 4th, 2012, Ordering chemotherapy to start on Ariel Brown, as verified on the Original Record October 3rd  2012, Ruled that radiation was necessary verified on the original record October 3, 2012, Sustained the appointment of a guardian ad !item particularly abusive to Eric Brown verified on the Original Record October 3rd , 2012, Reinforced ruling as to the need for chemotherapy as verified on the Original Record October 11th 2 012, After considerable topical discussion of radiation, Judge Andell interfered with our parental rights and sustained continuing radiation.

(4) A void judgment is a nullity from the beginning and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights. Ex parte Seidel, 39 S.W.3d 221, 225 (Tex. Crim. App. 2001). A Void Judgment Is a Void Judgment Is a Void Judgment-Bill of Review and Procedural Due Process in Texas, 40 Baylor L. Rev. 367, 378-79 (1988). See Thomas, 906 S.W.2d at 262 (holding that [the]trial court has not only power but duty to vacate a void judgment; accordingly, this Court rules, determines, and decrees that the proceedings in this instant case are void returning the matter nunc pro tunc to the last day before the first void Order, ruling, or determination.

Exchanging then for now, the parties shall be empowered to proceed with their respective claims; however, the State's claims are covered by the claims of the Browns warranting fully adjudicating their claims before reaching the claims of the State and then only if not fully disposed of by the Brown's counterclaims.

_____        _____
DATE                   Judge of the Court of Appeals for the district of TX

**CERTIFICATE OF SERVICE**

I, Eric Brown, hereby certify that a true and correct copy of the above and foregoing petition for a writ of mandamus was emailed to:

Judge Janet M Heppard through Yvonne Ramirez her Court Coordinator

Office of Court Administration Coastal Bend Children's Court

5

Galveston, Fort Bend, and Wharton Counties

Cell #: (346) 696-9801

yvonne.ramirez@txcourts.gov

Eric Brown

# EXHIBITS

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Family Law Division
Ft. Bend Assistant County
Attorney
301 Jackson St 3rd Fl,
Richmond, TX 77469

9590 9402 8812 4005 5831 56

2. Article Number *(Transfer from service label)*

9589 0710 5270 1278 3399 74

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*          C. Date of Delivery

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:     ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt



USPS TRACKING #

HOUSTON TX PCC 773

1 OCT 2024 PM 5 L

First-Class
Postage &
USPS
Permit No.

9590 9402 8812 4005 5831 56

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this b

c/o Eric Brown
6507 Grapevine Bnd
Manvel, TX 77578

IN THE DISTRICT COURT OF FORT BEND COUNTY, TEXAS
387TH JUDICIAL DISTRICT

**TRIAL COURT CAUSE NO. 12-DCV-197,806**

In THE INTEREST OF AERIEL BROWN

Motion to vacate the orders, rulings, and determinations of
Honorable ERIC ANDELL

## Brief in support

Date, Sally Brown, Assistant County Attorney, brought suit in
this Court seeking to circumvent the parental rights of Eric Brown
and Angie Brown regarding their daughter Aeriel Brown's medical
care and treatment. Visiting judge Andell presumed to adjudicate
the claims of Sally Brown without the by-law mandate of filing
certified copies of Honorable ERIC ANDELL's oaths. During the
proceedings, Judge Andell made a number of judicial rulings which
Eric Brown and Angie Brown sincerely believed adverse to their
daughter's welfare based not on their own observations but relying
on medical experts certified as competent to render diagnoses and
learned opinions were qualified to make.

This motion does not at this time argue against the
correctness of actions taken in re the orders, rulings, and
determinations of Judge Andell or whether certain parties
appearing as witnesses' representations to Judge Andell's Court
were misleading or technically in conflict with prior diagnoses,
the procedural regularity of treatment as prior recommended by
Eric Brown and Angie Brown's physicians or whether other medical

1

treatment was consistent with the appropriate standard of care. **This motion addresses the question of whether the orders, rulings, and determinations were all facially void for want of a court of competent jurisdiction Judge Andell having proceeded in clear absence of jurisdiction for "Honorable ERIC ANDELL"'s failure to comply with Oath requirements as articulated infra.**

Determination by this Court that Judge Andell made the following judicial determinations which were unauthorized including but not necessarily limited to:

(1) Ordering chemotherapy to start on Ariel Brown as verified on the Original Record May 4th, 2012 included but limited to at Page 7, lines 16-25, Page 8, lines 10 & 11 and lines 21-25, Page 18, lines 1-10 and at Page 74, lines 12-15. Page 81, lines 19-25

(2) Coincidently, in effect, ordering radiation as verified dozens of times on the Original Record in re May 4th, 2012.

(3) Ratified the impairment of parental rights as verified on the Original Record May 4th, 2012 at Page 71, lines 1 & 2 and at Page 77 lines 1-7.

(4) Ordering chemotherapy to start on Ariel Brown, as verified on the Original Record October 3rd, 2012, transcript at Page 7 lines 21-23 and at Page 8 line 10. Also on the Original Record May 4th, 2012, Page 81, lines 19-25

2

(5) Ruled that radiation was necessary verified on the Original Record October 3ʳᵈ, 2012, transcript at Page 6 lines 20-23, Page 7, lines 1-10, Page 8, lines 13-25, Page 9, lines 4 & 5, and lines 21-25, Page 10, line 7 & 8, Page 11, lines 1-12 and lines 24 & 25. Page 12 lines 1 & 2, 6 & 7, and 11-13. And at Page 13, lines 8-23.

(6) Sustained the appointment of a guardian ad litem particularly abusive to Eric Brown verified on the Original Record October 3ʳᵈ, 2012, transcript at Page 1, line 9, Page 7, lines 6-9 and at Page 11, lines 16-25.

(7) Reinforced ruling as to the need for chemotherapy as pverified on the Original Record October 11ᵗʰ, 2012, Page 18, lines16 & 17.


Bears on this Court the nondiscretionary duty to vacate all the orders, rulings, and determinations nunc pro tunc, exchanging, legally speaking, then for now as if they never were.


### Memorandum of law

THE TEXAS CONSTITUTION

ARTICLE 16. GENERAL PROVISIONS

Sec. 1.  OFFICIAL OATH OF OFFICE.  (a) All elected and appointed officers, before they enter upon the duties of their offices, shall take the following Oath or Affirmation:

"I, _____, do solemnly swear (or affirm), that I will faithfully execute the duties of the office of

3

_____ of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God."

(b)  All elected or appointed officers, before taking the Oath or Affirmation of office prescribed by this section and entering upon the duties of office, shall subscribe to the following statement:

"I, _____, do solemnly swear (or affirm) that I have not directly or indirectly paid, offered, promised to pay, contributed, or promised to contribute any money or thing of value, or promised any public office or employment for the giving or withholding of a vote at  the election at which I was elected or as a reward to secure my appointment or confirmation, whichever the case may be, so help me God."

(c)  Members of the Legislature, the Secretary of State, and all other elected and appointed state officers shall file the signed statement required by Subsection (b) of this section with the Secretary of State before taking the Oath or Affirmation of office prescribed by Subsection (a) of this section.  All other officers shall retain the signed statement required by Subsection (b) of this Section with the official records of the office. *Missing from Judge David Evans' 2018 Oath of Office is the stamp that signifies that it was filed, as required by law, with the Secretary of State. Courtesy Secretary of State*

SEE: "As the presiding judge for the North Texas region, David Evans oversees a wide range of tasks that allow the civil, family, and criminal courts across 13 counties to function. Responding to public requests for court documents, ensuring visiting retired judges are qualified for their assignments, and coordinating time off for judges are some of the more common duties fulfilled by a regional presiding judge, and Evans has served as head of North Texas' judicial region since 2014.

4

For the past four months, Evans has been the focus of continuous investigation and reporting by the *Weekly*. In March, our research found that Evans assigned a visiting retired judge to more than 200 criminal cases between 2015 and 2022 as a senior judge even though the retired judge was never bestowed that important title by Texas Chief Justice Nathan Hecht.

The newest problems facing Evans are tied to his apparent failure to file his Oath of Office with the Secretary of State's office (SOS) following his recent reassignment as head of the Eighth Administrative Judicial Region, an area that encompasses North Texas. Following an election or appointment, all judges in Texas must file the Oath of Office before setting upon the duties of their office. Oaths are only valid once they are filed with the state, county, or city, depending on which type of officeholder is filing.

Two weeks ago, a confidential source sent us copies of government documents that showed Evans did not file the required oaths following his June reappointment by Gov. Greg Abbott. In an email, a spokesperson for Evans rebutted the accusation.

Following the recent appointment, a Statement of Officer and an Oath of Office were filed with the Secretary of State, and the region has filed marked copies of the same, the spokesperson wrote without providing proof.

After I requested copies of the oaths in question — the Statement of Officer, also known as the anti-bribery oath, and Oath of Office, both of which must be signed and filed — I was told by a SOS spokesperson that Evans did not file any oaths following his reappointment.

A diligent search of the records of this office found no documents responsive to your request," the SOS spokesperson responded.

The rulings and **orders** of judges who did not meet the constitutional requirement to take and file the Statement of Officer/anti-bribery oath and Oath of Office can and have been overturned. Article 16 of the Texas Constitution is clear: All elected and appointed officers, before they enter upon the duties of their offices, shall take the following Oath.

Numerous rulings by the Texas Court of Criminal Appeals and opinions by the State Attorney General have consistently upheld that **rulings and actions by judges who have failed to take the Oath of Office are void.** One oft-cited Court of Criminal Appeals case, *French v. State*, overturned the rulings of a temporarily appointed municipal judge in Hurst, Judge R.A. Hargrave, because he failed to take his Oath of Office before ruling over cases following his appointment.

The Court of Criminal Appeals' 1978 ruling reads, We hold that without the taking of the oath prescribed by the Constitution of this State, one cannot become [a lawful judge], and **his acts as such are void.**

Through a request for records known as Rule 12, I sought copies of the original oaths that Evans must retain at his downtown office. My request to the Eighth Administrative Judicial Region was answered with copies of the recent Statement of Officer/anti-bribery oath and Oath of Office but no explanation why the SOS does not have those oaths on file, and the SOS has

6

not returned my repeated requests for an explanation of the discrepancy.

A separate open records release from the SOS shows that Evans failed to file the Statement of Officer/anti-bribery oath, which must be filed before the Oath of Office, at the beginning of his previous appointment as head of North Texas' judicial region. Evans' 2018 appointment may be void due to that error and because the one oath he did take, the Oath of Office, is missing the SOS stamp that signifies it was properly filed with the state.

If Evans failed to take his oath properly on time and file it with the SOS, that misstep could jeopardize Aaron Dean's upcoming trial. The former Fort Worth police officer stands charged with the 2019 murder of a young Black woman, Atatiana Jefferson, in 2019. In late June, Evans, following his recent reappointment, assigned visiting retired Justice Lee Gabriel to preside over the recusal of Judge David Hagerman from Dean's case. The defendant's lawyers successfully argued that Hagerman was biased against and hostile toward them. The validity of Evans' assignment of Gabriel is now in question as is the authority of Gabriel to recuse Hagerman because the justice also failed to file her oaths at the beginning of her late June assignment, based on SOS findings.

As a matter of policy, the State Commission on Judicial Conduct does not confirm or comment on investigations, but a confidential source (not the one previously mentioned) sent me a copy of a recent sworn complaint filed by a former justice of the peace to the commission. It's by Jacqueline Wright, alleges Evans falsified more than 200 government documents as a means of

7

allowing a constitutionally unqualified judge to preside over misdemeanor and felony cases in Evans' absence between 2015 and early this year.

Under Chapter 75 of Texas Government Code, visiting retired judges must attain senior judge status before ruling on cases as a visiting retired judge, but longtime misdemeanor judge Daryl Coffey, based on our findings, never sought or was given that title from Chief Justice Hecht No Authority, June 22). Publicly, Evans disclosed Coffey's true title by listing him as a non-senior visiting retired judge on several annual public disclosures, but Evans privately bestowed Coffey with the false title of senior judge on rarely seen forms called Order of Assignment that are accessible only by judges like Coffey and administrative judges.

Bestowing a false title on Coffey using the Order of Assignment forms gave the appearance that Coffey was constitutionally qualified for those cases.

The falsified forms may have allowed Coffey to earn sizable money fraudulently from the county since senior judges are paid around $500 a day while on assignment.

Coffey may not be the only non-senior judge to be unlawfully assigned by Evans. A recent Rule 12 request reveals 127 Order of Assignment forms — filed between January and July of this year — for local visiting retired judges listed as non-senior on the Eight Administrative Judicial Region's website, meaning Evans may have unlawfully assigned other non-senior judges as senior judges to criminal cases.

8

Evans has taken no steps to rectify Coffey's constitutionally void assignments and has ignored our requests for comment.

Evans is far from the only Tarrant County judge aware of Coffey's failure to seek senior judge status. Internal emails from the Tarrant County District Attorney's office show that DA Sharen Wilson was informed about Coffey's false title of senior judge on several occasions by DA staffers who have read our extensive reporting.

This article, reads a May 13 email addressed to DA Wilson, is about Daryl Coffey and whether he legally presided over cases, including one against [former Justice of the Peace] Jacqueline Wright."

"A void judgment is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." Ex parte Seidel, 39 S.W.3d 221, 225 (Tex. Crim. App. 2001).

A Void Judgment Is a Void Judgment Is a Void Judgment-Bill of Review and Procedural Due Process in Texas, 40 Baylor L. Rev. 367, 378-79 (1988). See Thomas, 906 S.W.2d at 262 (holding that trial court has not only power but duty to vacate a void judgment).

9

A judgment is void only when it is clear that the court rendering judgment had no jurisdiction over the parties or subject matter, no jurisdiction to render judgment, or no capacity to act as a court. When appeal is taken from a void judgment, the appellate court must declare the judgment void. Because the appellate court may not address the merits, it must set aside the trial court's judgment and dismiss the appeal. A void judgment may be attacked at any time by a person whose rights are affected. See El-Kareh v. Texas Alcoholic Beverage Comm'n, 874 S.W.2d 192, 194 (Tex. App.-- Houston [14th Dist.] 1994, no writ); see also Evans v. C. Woods, Inc., No. 12-99-00153-CV, 1999 WL 787399, at *1 (Tex. App.--Tyler Aug. 30, 1999, no pet. h.).

A void judgment is a "nullity" and can be attacked at any time. Deifik v. State, No. 2-00- 443-CR (Tex.App. Dist.2 09/14/2001). "A void judgment is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." Since the trial court's dismissal "with prejudice" was void, it may be attacked either by direct appeal or collateral attack Ex parte Williams, No. 73,845 (Tex.Crim.App. 04/11/2001).

"A void judgment is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect,

10

impair, or create legal rights." Ex parte Spaulding, 687 S.W.2d at 745 (Teague, J., concurring).

Since the trial court's dismissal "with prejudice" was void, it may be attacked either by direct appeal or collateral attack. See Ex parte Shields, 550 S.W.2d at 675 a void judgment can be collaterally attacked. See Glunz v. Hernandez, 908 S.W.2d 253, 255 (Tex. App.-San Antonio 1995, writ denied); Tidwell v. Tidwell, 604 S.W.2d 540, 542 (Tex. Civ. App.- Texarkana 1980, no writ) (finding that a void judgment may be collaterally attacked by a suit to set aside the judgment after it has become final if such void judgment becomes material).

We agree. A collateral attack is any proceeding to avoid the effect of a judgment which does not meet all the requirements of a valid direct attack. See Glunz, 908 S.W.2d at 255.

There is neither a set procedure for a collateral attack nor a statute of limitations. See Glunz, 908 S.W.2d at 255; Davis v. Boone, 786 S.W.2d 85, 87 (Tex. App.-San Antonio 1990, no writ).

Collateral attacks may be only used to set aside a judgment which is void, or which involved fundamental error. See Glunz, 908 S.W.2d at 255.

Fundamental error for this purpose means cases where the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas. See id. The

11

cases distinguish between judgments which are void, and therefore may be set aside by a collateral attack, and those which are voidable and must be attacked by a valid direct attack. See id. A judgment is void if it is shown that the court lacked jurisdiction 1) over a party or the property; 2) over the subject matter; 3) to enter a particular judgment; or 4) to act as a court. Jurisdiction could not be conferred by waiver or retroactively ELNA PFEFFER ET AL. v. ALVIN MEISSNER ET AL. (11/23/55) 286 S.W.2d 241.

Strictly speaking a void judgment is one which has no legal force or effect whatever. It is an absolute nullity and such invalidity may be asserted by any person whose rights are affected, at any time and at any place. It need not be attacked directly, but may be attacked collaterally whenever and wherever it is interposed. Usually it carries the evidence of its invalidity upon its face, while a voidable judgment is one apparently valid, but in truth wanting in some material respect; in other words, one that is erroneous. Such vice may be the want of jurisdiction over the person or other similar fundamental deficiency, but which vice does not affirmatively appear upon the face of the judgment.'"BILLY DUNKLIN v. A. J. LAND ET UX. 297 S.W.2d 360 (12/21/56).

Where a void judgment has been rendered and the record in the cause, or judgment roll, reflects the vice, then the court has not only the power but the duty and even after the expiration of the term to set aside such judgment. Harrison v. Whiteley,

**12**

Tex.Com.App., 6 S.W.2d 89.

This court in Neugent v. Neugent, Tex.Civ.App., 270 S.W.2d 223, followed and applied the rule announced in the Harrison-Whiteley case.

The Supreme Court, speaking through Folley, Commissioner, in Bridgman v. Moore, 143 Tex. 250, 183 S.W.2d 705, at Page 707, said: "The court has not only the power but the duty to vacate the inadvertent entry of a void judgment at any time, either during the term or after the term, with or without a motion therefore." We will not extend this discussion further than to state that we here reaffirm the holding on the point involved as announced by Justice Hightower in the former appeal (301 S.W.2d 181). While this holding was premature in view of the action of the Supreme Court (304 S.W.2d 265) reversing our holding, it was not upon the points discussed in Justice Hightower's opinion, but was on the point that since the judgment appealed from was an interlocutory one and not final, the appeal should be dismissed. However, we think our holding then is now appropriate. A void judgment has been termed mere waste paper, an absolute nullity; and all acts performed under it are also nullities.

Again, it has been said to be in law no judgment at all, having no force or effect, conferring no rights, and binding nobody. It is good nowhere and bad everywhere, and neither lapse of time nor judicial action can impart validity. Commander v.

13

Bryan, 123 S.W.2d 1008, (Tex.Civ.App., Fort Worth, 1938, n.w.h.);

34 Tex.Jur., Sec. 262, Page 177; Maury v. Turner, 244

    S.W. 809, (Tex.Com.App., 1922).

    Also, a void judgment has been defined as "one which has no legal force or effect, invalidity of which may be asserted by any person whose rights are affected at anytime and at any place directly or collaterally." Black's Law Dictionary; Reynolds v. Volunteer State Life Ins. Co., 80 S.W.2d 1087, (Tex.Civ.App., Eastland, 1935, writ ref.); Gentry v. Texas Department of Public Safety, 379 S.W.2d 114, 119, (Tex.Civ.App., Houston, 1964, writ ref., n.r.e., 386 S.W.2d 758).

    It has also been held that "It is not necessary to take any steps to have a void judgment reversed, vacated, or set aside. It may be impeached in any action direct or, collateral.' Holder v.

Scott, 396 S.W.2d 906, (Tex.Civ.App., Texarkana, 1965, writ ref., n.r.e.).

## Declaration

    Twenty-one (21) days from the verifiable receipt of the above and foregoing motion to vacate, an order shall be presented to the Court for ratification vacating the Orders, rulings, and determinations of Hon. Eric Andell unless before that time opposing counsel enters both of Andell's required oaths of office authenticated as filed and of record in IN THE DISTRICT COURT OF

14

FORT BEND COUNTY, TEXAS, 387TH JUDICIAL DISTRICT ante dating

proceedings in TRIAL COURT CAUSE NO. 12-DCV-197,806.


    Prepared and submitted by Eric Brown
    Eric Brown
    6507 Grapevine Bend
    Manvel, TX 77578
    281-914-6976
    Vigilant.Brown@Gmail.com

### Certificate of mailing

I, Eric Brown, certify that today 9/26/24, I mailed a true and correct copy of the above and foregoing motion to vacate via certified mail number **9589 0710 5270 1278 3399 74**, to:


    SALLY BROWN or Ms. Brown's replacement
    Assistant County Attorney
    301 Jackson Street
    Richmond, Texas 77469


    /s/ Eric Brown

    Eric Brown

**FILED**

SEP 2 5 2024

AT 9:10 A M.

CLERK DISTRICT COURT, FORT BEND CO, TX

15

1                    REPORTER'S RECORD
                    VOLUME 1 OF 1 VOLUME
2

3          TRIAL COURT CAUSE NO. 12-DCV-197,806

4    IN THE INTEREST OF        )    IN THE DISTRICT COURT OF
                               )
5                              )    FORT BEND COUNTY, TEXAS
                               )
6    AERIAL BROWN,             )
     A MINOR CHILD             )    387TH JUDICIAL DISTRICT
7

8

9    _____

10
                    REPORTER'S RECORD
11

12   _____

13

14       On the 4th day of May, 2012, the following

15   proceedings came on to be held in the above-titled and

16   numbered cause before the Honorable Eric Andel, Judge

17   Presiding, held in Richmond, Fort Bend County, Texas.

18       Proceedings reported by Certified Shorthand Reporter

19   and Machine Shorthand/Computer-Aided Transcription.

20

21

22

23

24

25

                 M. Nancy Capetillo, CSR, TCRR
                      (281)344-7973

```
 1                    A P P E A R A N C E S
 2   COUNSEL FOR PETITIONER, CHILDREN'S PROTECTIVE SERVICES:
          Sally Brown, SBN 03168300
 3        Marjorie Hancock, SBN 00784201
          Chris McDaniel, SBN 13514520
 4        Fort Bend County Attorney
          5403 Avenue N
 5        Rosenberg, Texas 77471
          Telephone: 281-341-9955
 6
 7   COUNSEL FOR RESPONDENTS, ERIC BROWN AND ROSLYN ANGELA
     BROWN:
 8        Corinna Steele, SBN 19099500
          Attorney at Law
 9        402 S. 4th Street
          Richmond, Texas 77469
10        Telephone: 281-633-0224
11
     ATTORNEY AD LITEM FOR THE CHILD:
12        Teana Watson, SBN 20585570
          Attorney at Law
13        1 Sugar Creek Center Blvd., Suite 1045
          Sugar Land, Texas 77478
14        Telephone: 281-491-4838
15
     COUNSEL FOR UT MD ANDERSON CANCER CENTER:
16        Laurel Hyle, SBN 24040093
          UT MD Anderson Cancer Center
17        P.O. Box 301439
          Houston, Texas 77230
18        Telephone: 713-563-9509
19
     ALSO PRESENT:
20        Heather Rashid, CASA Volunteer and Guardian Ad Litem
          Charles Miles, CPS Investigator
21        Althea Edison, CPS Supervisor
          Chelsea Batchelder, Social Worker
22
23
24
25
```

M. Nancy Capetillo, CSR, TCRR
(281)344-7973

3

```
 1                         VOLUME 1

 2                     REPORTER'S RECORD

 3    May 4, 2012

 4                                            PAGE VOL.

 5    Proceedings ....................................4   1

 6    Soumen Khatua, M.D.            Direct    Cross   V.Dire
         By Ms. Brown               10 v1
 7       By Ms. Watson                        24 v1
         By Ms. Steele                        25 v1
 8       By Ms. Brown                         33 v1
         By The Court                         37 v1
 9

10    Petitioner rests  ..............................36   1
      Attorney Ad Litem for the Child rests  ..........50   1
11
      Roslyn A. Brown               Direct    Cross   V.Dire
12       By Ms. Steele              51 v1
         By Ms. Brown                         63 v1
13       By The Court                         66 v1

14    Court's Ruling .................................71   1

15    Adjournment ...................................82   1

16    Reporter's Certificate ........................83   1

17                ALPHABETICAL INDEX OF WITNESSES

18                               Direct    Cross   V.Dire

19    Brown, Roslyn A.             51 v1    63 v1
                                            66 v1
20
      Khatua, M.D., Soumen         10 v1    24 v1
21                                          25 v1
                                            33 v1
22                                          37 v1

23

24

25
```

M. Nancy Capetillo, CSR, TCRR
(281)344-7973

1    to see lead counsels back in chambers.

2                    Mr. and Mrs. Brown, we'll be right back

3    with you.  Okay?

4                    *(Break.)*

5                    *THE COURT:*  Doctor, if you'll raise your

6    right hand for me, please.

7                    *(Witness sworn.)*

8                    *THE COURT:*  Your name is?

9                    *THE WITNESS:*  Soumen Khatua.

10                    *THE COURT:*  Okay.  Can you -- do you

11    understand the spelling of that, or do you need the

12    spelling?

13                    *THE REPORTER:*  The spelling, please.

14                    *THE WITNESS:*  First name S-O-U-M-E-N and

15    last name K-H-A-T-U-A.

16                    *THE COURT:*  Mr. and Mrs. Brown, we were

17    back in chambers, which isn't unusual because I haven't

18    seen this file; I have not picked this file up at all,

19    but I know what this case is about.  It's about my

20    decision ultimately as to whether or not I'm going to

21    start chemotherapy.  That's really the bottom line.

22    Whether I start it or not and whether it continues is a

23    matter of medical protocol, but it's going to be a

24    question of whether or not I authorize the study to

25    start this treatment called chemotherapy, unless there

1  is another protocol that MD Anderson is going to talk to

2  me about.  And whether they consider it to be a

3  procedure that will go a long way in curing your

4  daughter, I don't know that.

5           This does not limit you in any way, no

6  matter what my decision is, to shop the medical records

7  around to third parties to develop other protocols that

8  may not -- may or may not be as adequate, scientifically

9  or otherwise.

10          In the event I'm going to find that

11  chemotherapy shall proceed -- no different than a blood

12  transfusion in a highly religious case, as you know,

13  like a Christian Science case, you know -- judges have

14  to make that decision, too, you know, whether to let a

15  child have a blood transfusion even though it's against

16  the parents' religion.  So we make these decisions all

17  the time.  But we try to do it the least intrusive way

18  possibly -- if the State were to prevail -- and always

19  to allow the parents the dignity of being the parents of

20  this child.

21          This has nothing to do with terminating

22  your rights or anything else.  This is strictly a very

23  narrow question.  Now I am going to step in the shoes of

24  a parent and say "yes."  Because if I say "yes," the

25  child will begin chemotherapy today or whenever --

*Reporter's Record*
*May 4, 2012*

1   whenever she's prepped or however that starts.  Okay.

2   Yes, that's a true statement.  That will be true, and

3   you won't be able to undo that decision.  Okay?

4                And then from there we take this case very

5   slowly to keep -- to monitor her progress.  We will also

6   confer with other doctors.  You will have your right to

7   confer with other doctors.  You will show them the

8   medical records.  They will share these medical records

9   with you as parents; and we will come to other

10  conclusions and decisions as the case goes on, if I were

11  to rule that way.

12               The only witness I'm going call today or

13  have called is:  Whether or not MD Anderson believes

14  that the beginning of chemotherapy is the most logical

15  medical protocol that could be followed that has the

16  best chance of having your daughter survive what's going

17  on right now in her life.  Okay.  That's what we're --

18  that's it.  Very short.  Okay?  And then we'll have

19  other -- we'll have other chats accordingly.  Okay.  Are

20  you with me, following?

21               That's what we were talking about back

22  there.  This stuff about meningitis and blood

23  transfusions and everything else, that's past tense.

24  That's -- that's yesterday's news.  And the good news

25  is, is that the crisis that was involved there has

*Reporter's Record*
*May 4, 2012*

1   apparently passed, temporarily.  But you're going to

2   hear the doctors testify that they believe that all of

3   these ailments emanate from this brain tumor.  That's

4   what they're going to say.  That's what they're going to

5   believe.  I don't know that you have got any doctors to

6   contradict that right now.  Okay?  But you'll have time

7   to do that later on.  Okay.  All right.  Fair enough?

8   We're ready?

9                *THE FATHER:*  Yes, sir.

10                *THE COURT:*  Are you going to abandon your

11  termination?

12                *MS. BROWN:*  I am.  I'll do that first.

13  Judge, at this time the State would like to abandon the

14  termination paragraphs in the petitioner's petition, and

15  we'll be going forward only on the conservatorship.

16                *THE COURT:*  Okay.  That's granted.

17                *MS. BROWN:*  And if you'll give me the

18  file, after the hearing I'll cross those out.

19                *THE COURT:*  Okay.  All right.  Call your

20  first witness.

21                *MS. BROWN:*  I call Dr. Khatua.

22                **SOUMEN KHATUA, M.D.,**

23  having been first duly sworn, testified as follows:

24                **DIRECT EXAMINATION**

25

Reporter's Record
May 4, 2012

1  BY MS. BROWN:

2      Q.   Sir, will you state, your full name?

3                 (Discussion off the record.)

4                 THE COURT:  And I want y'all to hear this.

5  Now you don't have to stay back -- way in the back.  Can

6  you hear them okay?

7                 THE FATHER:  Yes, sir.

8      Q.   (BY MS. BROWN)  Will you state your full name,

9  please?

10     A.   Soumen Khatua.

11     Q.   And how are you employed?

12     A.   I'm employed as a pediatric neuro-oncologist at

13  MD Anderson.

14     Q.   And as a pediatric neuro-oncologist, what is

15  your background and your training for that position?

16     A.   So I did my chemo fellowship with special

17  interest in neuro-oncology brain tumors at the

18  Children's National Medical Center in Washington, D.C.,

19  and worked with one of the leaders, Roger Packer.  And I

20  did my specialized training in pediatric brain tumors at

21  the Children's Hospital of Los Angeles, especially with

22  Dr. Jonathan Finlay, who is a pioneer and has an

23  international reputation with germ cell tumors in

24  children.  Henceforth, I am with MD Anderson.

25     Q.   And how long have you been with MD Anderson?

1    chemotherapy and radiation treatment.

2        Q.    And what if Aerial doesn't receive the

3    chemotherapy?  What will happen to her?

4        A.    In general, children with these tumors, if you

5    don't treat with chemotherapy, they will start having

6    dysfunction because of the tumor compression, which

7    she's evidencing right now; and the tumor can progress.

8    I don't know where she is now because the last diagnosis

9    was on 4-11-2012.  The tumor can spread to the spine,

10   and the child will die.

11       Q.    Okay.  And so right now, your understanding of

12   Aerial's medical condition is that she's stable right

13   now with the need of a blood transfusion, except for

14   the --

15       A.    With a need -- so --

16       Q.    Okay.  And -- but she is ready for treatment?

17       A.    Yes.

18       Q.    Chemotherapy being the treatment needed?

19       A.    The only thing I would say, Your Honor, is I

20   know at the previous hospital, Texas Children's, they

21   had an MRI, brain and spine, which was done, I believe,

22   4-11.  I think a reevaluation of the brain and spine to

23   see if it -- if it is still stable enough, responsive,

24   close to a month.

25       Q.    Okay.  So you would do -- you would --

*Reporter's Record*
*May 4, 2012*

1  that is?

2              MS. BATCHELDER:  Yes, they should.

3              THE COURT:  They don't.  She's waving her

4  head that she doesn't.

5              I'm going to sort this out.  Let me just

6  sort this out, because everyone is going to be talking

7  back and forth every once in a while.

8              *(Discussion off the record.)*

9              MS. WATSON:  I guess -- could we get on

10  the record?

11              THE COURT:  Yes.

12              MS. WATSON:  I'm not sure the best way to

13  facilitate it; but I have talked to some medical

14  professionals specifically about, hypothetically, a

15  young child with this type of illness undergoing

16  chemotherapy and so on.  And one of the things that

17  someone in the profession told me was the parents will

18  need a lot of counseling, seeing their child.

19              When you're undergoing chemo, you look

20  pretty poorly and you look really sick; and it's very

21  hard on a parent to see their child look really sick.

22  Until you come out of the treatment, which is going to

23  take a while, you look like you're probably going to

24  succumb because it's a hard process.  And I think, you

25  know, in speaking with the parents, I think it's very

1    Dr. Burzynski.

2              MS. BROWN:  Right.

3              THE COURT:  Fine.  It's okay with me.

4    There's a doctor down in Mexico.  They may go down there

5    and confer.  They may go to Johns Hopkins -- I don't

6    know -- Mayo Clinic, Sloan-Kettering.  I don't know

7    where they may go and take this material.  And if

8    Sloan-Kettering says, "Oh, no, no, no, we've come up

9    with something new; this is what they should be doing,"

10   we'll have a meeting.  I don't know.  They trade -- they

11   trade protocols all the time if it has medical -- good

12   medical science behind it.  That's what I'm talking

13   about.  Oh, they can't initiate.  They can't remove the

14   child, take the kid to Sloan-Kettering.

15             MS. BROWN:  I just want to be clear.

16             THE COURT:  No, no, no.  No, I can't stop

17   them from pursuing --

18             MS. BROWN:  Correct.

19             THE COURT:  -- the Web sites and the

20   doctors here and there.  No, they can't change the

21   protocol.  But you are to start the protocol today.  I

22   didn't do this just as an exercise.

23             DR. KHATUA:  No, we will start the --

24             THE COURT:  No, and I -- have the forms

25   been signed?

1            REPORTER'S RECORD

2            VOLUME 1 OF 1

3       TRIAL COURT CAUSE NO. 12-DCV-197,806

4

5    _____

6    In THE INTEREST OF        IN THE DISTRICT COURT OF

7                             FORT BEND COUNTY, TEXAS

8    AERIAL BROWN              387TH JUDICIAL DISTRICT

9                      ,

10

11

12   October 3, 2012

13   _____

14

15

16

17        On the 3rd day of October 2012, the
     above-styled cause of action came on to be heard in the
18   387th Judicial District Court, the Honorable ERIC ANDELL
     presiding; and the following proceedings were held in
19   Richmond, Fort Bend County, Texas:
          Proceedings reported by COMPUTERIZED STENOTYPE
20   MACHINE; Reporter's Record produced by COMPUTER-ASSISTED
     TRANSCRIPTION.

21

22        WINONA GIBSON WILLIAMS, Texas CSR #692
                 Court Reporter
23               P.O. Box 988
             Brazoria, Texas  77422
24               (979) 798-9651

25

1                          APPEARANCES

2     ATTORNEY FOR PETITIONER     RESPONDENTS

3
      SALLY BROWN                 ERIC BROWN, Pro se
4     Assistant County Attorney   ANGIE BROWN, Pro se
      301 Jackson Street          3111 Shiloh Dr.
5     Richmond, Texas 77469       Missouri City, Texas  77459
      Phone: (281)342-3411        Phone: (281) 914-6976
6

7

8     ATTORNEY AD LITEM

9     TEANA WATSON
      Attorney at Law
10    One Sugar Creek Center Blvd.
      Suite 1045
11    Sugar Land, Texas  77478
      Phone: (281)491-4838
12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 00:12:50 | 1 | THE COURT: On the record.  Everyone who's |
| 00:13:20 | 2 | going to testify, please raise your right hands. |
| 00:13:22 | 3 | (Witnesses sworn). |
| 00:13:24 | 4 | THE COURT: Let's see who's here. |
| 00:13:26 | 5 | MS. WATSON: Teana Watson, Attorney ad Litem |
| 00:13:27 | 6 | for the child. |
| 00:13:30 | 7 | MS. RASHID: Heather Rashid, CASA. |
| 00:13:31 | 8 | MS. MONTGOMERY: Jennifer Montgomery, |
| 00:13:31 | 9 | Guardian ad Litem. |
| 00:13:36 | 10 | MR. BROWN: Eric Brown. |
| 00:13:38 | 11 | MRS. BROWN: Angie Brown. |
| 00:13:39 | 12 | MS. WILLIAMS: Trisha Williams, CPS |
| 00:13:40 | 13 | caseworker. |
| 00:13:42 | 14 | MS. McCADNEY: Daffney McCadney, CPS |
| 00:13:42 | 15 | supervisor. |
| 00:13:43 | 16 | MS. BROWN:  Sally Brown, Assistant County |
| 00:13:44 | 17 | Attorney. |
| 00:13:45 | 18 | THE COURT:  I want to be clear what this |
| 00:13:47 | 19 | hearing -- this is not especially a hearing -- what |
| 00:13:48 | 20 | we're here for and what we're not here for, because I |
| 00:13:52 | 21 | have -- Judge Kerns referred to me a packet of material, |
| 00:13:57 | 22 | which included request for temporary restraining order. |
| 00:14:02 | 23 | And pursuant to his Court's procedure, they never once, |
| 00:14:07 | 24 | ever once in court, has a courtroom setting -- he didn't |
| 00:14:11 | 25 | grant those without a hearing.  He referred this back to |

00:20:16  1  if we're going to go ahead and represent -- we're going

00:20:19  2  to be pro se, then it's going to take evidence at this

00:20:23  3  temporary injunction; and I'll ask you, when do you want

00:20:28  4  -- when do you want to have a hearing on this temporary

00:20:30  5  injunction.  You're the moving party.  We're going to

00:20:35  6  step aside.  You're going to bring your witnesses in,

00:20:40  7  your experts in.  They're going to, presumptively,

00:20:44  8  interpret the data, but more importantly, not to

00:20:49  9  re-visit why you chose not to let your daughter have

00:20:54  10 chemotherapy.  That was from the witness stand

00:20:57  11 uncontradicted by professional cross-examination of

00:20:59  12 witnesses.

00:21:00  13         So now, all I'm saying is -- and I said it

00:21:03  14 two weeks ago or last week, because you had indicated

00:21:07  15 that you were going to bring -- and the same thing if

00:21:09  16 I'd been talking to a lawyer.  Same thing I'd be saying

00:21:12  17 to your lawyer.  You've indicated you were going to

00:21:14  18 bring evidence or something to contradict the path of

00:21:17  19 this treatment.  No one is anxious to go through

00:21:23  20 radiation for your daughter.  Trust me.  No one.  This

00:21:27  21 isn't some laboratory experiment we're going through,

00:21:31  22 here.  If the doctors where she's being treated would

00:21:36  23 say to me, she didn't need radiation, except for

00:21:43  24 follow-up, it's over.  It's over.

00:21:47  25         Mr. Brown, if you're going to continue and

| | | |
|---|---|---|
| 00:21:50 | 1 | you want your date set for the temporary injunction, |
| 00:21:55 | 2 | then be prepared to show cause, show cause to the state |
| 00:22:03 | 3 | why we should not continue radiation.  I hope there are |
| 00:22:06 | 4 | witnesses out there.  I hope that your professional team |
| 00:22:09 | 5 | will convince me not to continue a course of radiation. |
| 00:22:12 | 6 | I really do.  I'm hoping that the attorney ad litem and |
| 00:22:16 | 7 | the guardian ad litem will re-visit this same issue with |
| 00:22:19 | 8 | the doctor in the present treatment model, that they may |
| 00:22:24 | 9 | not need radiation.  I hope that's true.  I hope that's |
| 00:22:28 | 10 | true. |
| 00:22:29 | 11 | MR. BROWN:  Am I understanding that a |
| 00:22:30 | 12 | medical file does not add adequate information. |
| 00:22:34 | 13 | THE COURT:  That's right.  The medical file |
| 00:22:36 | 14 | as attached here with underlining and -- I wouldn't, I |
| 00:22:44 | 15 | couldn't anymore tell you -- nor any Judge -- what that |
| 00:22:48 | 16 | means.  Who underlined it?  Why was it underlined?  Why |
| 00:22:51 | 17 | those things were underlined, other things aren't |
| 00:22:54 | 18 | underlined.  It's not evidence.  It's not introduced |
| 00:22:58 | 19 | properly as evidence, and it's not interpreted properly |
| 00:23:02 | 20 | as evidence. |
| 00:23:06 | 21 | MR. BROWN:  Do you recall ordering the |
| 00:23:07 | 22 | doctor on April the 30th, to start chemo on my daughter? |
| 00:23:11 | 23 | I mean, May 4th. |
| 00:23:12 | 24 | THE COURT: I can't remember those dates. |
| 00:23:15 | 25 | MR. BROWN:  I'll check with the court |

00:23:16   1   reporter and see if she's got it documented.

00:23:21   2             MS. BROWN:  This isn't about chemo, anymore.

00:23:24   3             MR. BROWN:  It's about ordering a medical

00:23:25   4   procedure.

00:23:26   5             MS. BROWN:  That's not what you're talking

00:23:28   6   about in your order, in your application for the

00:23:29   7   temporary restraining order.

00:23:31   8             THE COURT:  The only thing you can stop me

00:23:32   9   from doing, which I welcome, is the ongoing treatment.

00:23:36  10   I can't undo chemotherapy. I can't undo the fact that

00:23:41  11   the tumor has now been removed by surgery.  I can't undo

00:23:44  12   any of that.  That's been done.

00:23:46  13             Now, the question is and I thought the only

00:23:48  14   question that we were talking about, straight up, was

00:23:51  15   you had a difference of opinion, layperson's difference

00:23:54  16   of opinion that she didn't need radiation.  And all I

00:24:02  17   know is, that's the only protocol that's been presented

00:24:05  18   to me, that she needed follow-up radiation.

00:24:08  19             MS. BROWN:  Judge, if I can interject, the

00:24:10  20   hearing's going to have to be next week, because

00:24:13  21   radiation is going to start the following week.  We need

00:24:16  22   a hearing sometime next week.

00:24:19  23             MR. BROWN:  We met with the radiation

00:24:21  24   doctor, yesterday.  He refuses to do anything for my

00:24:25  25   daughter until he gets pathological confirmation.  He

| | |
|---|---|
| 00:24:28 | 1 |
| 00:24:32 | 2 |
| 00:24:33 | 3 |
| 00:24:36 | 4 |
| 00:24:38 | 5 |
| 00:24:42 | 6 |
| 00:24:44 | 7 |
| 00:24:48 | 8 |
| 00:24:51 | 9 |
| 00:24:54 | 10 |
| 00:24:59 | 11 |
| 00:25:05 | 12 |
| 00:25:12 | 13 |
| 00:25:15 | 14 |
| 00:25:25 | 15 |
| 00:25:29 | 16 |
| 00:25:33 | 17 |
| 00:25:36 | 18 |
| 00:25:40 | 19 |
| 00:25:45 | 20 |
| 00:25:48 | 21 |
| 00:25:53 | 22 |
| 00:25:57 | 23 |
| 00:25:59 | 24 |
| 00:26:04 | 25 |

don't even believe she has cancer.

MS. BROWN:  Bring the doctor in.  That's what he's been telling you for months.

MR. BROWN:  I'm baffled as to how this got to chemo and radiation.  That's what's confusing me.

THE COURT:  I need you to focus on the present tense verb, here.  I know you're angry.  You've been angry.  You've taken this on as a parental -- I know.  I get it.  I'm with you.  I get it.  I understand it.  Okay?  But based on the evidence in front of me, I ordered certain things.  That's true, and it has been ongoing. That's true, but right now, I've entered a fork in the road, philosophically, of where I want to go in this case. You find me in a very good spot.  I too am curious about the next steps, here; but without any evidence to the contrary, based upon what was told to us about the protocol that was going to be followed and I might add -- maybe it wasn't voluntarily -- your agreement to follow their protocol.  You may have been biting your tongue and whatever, biting your lip about saying, yes, you will follow their protocol.  Their protocol included radiation.  I'm in a delicate juncture, now.  If we don't need radiation, we won't have radiation.  I promise you that.  I don't anymore want to see her undergo radiation than anybody else in

| | | |
|---|---|---|
| 00:26:07 | 1 | this room, but the protocol that was presented to me and |
| 00:26:13 | 2 | was agreed upon by you-all as parents, to following |
| 00:26:16 | 3 | protocol.  You agreed to the protocol; but you said you |
| 00:26:20 | 4 | would follow the protocol, as long as we moved the child |
| 00:26:22 | 5 | out of MD Anderson Hospital.  And we did.  I remember |
| 00:26:25 | 6 | those conversations. |
| 00:26:28 | 7 | Bring me evidence that she does not need an |
| 00:26:35 | 8 | ongoing protocol of radiation.  Bring me evidence.  I'm |
| 00:26:41 | 9 | going to dispatch those that are under my power to make |
| 00:26:45 | 10 | that inquiry straight-up with the doctors at the |
| 00:26:49 | 11 | hospital, to confirm, re-confirm that this is the only |
| 00:26:55 | 12 | out for us, that she's got to have it.  If they say |
| 00:27:00 | 13 | they're ambivalent or they say she doesn't, I think we |
| 00:27:04 | 14 | pretty much resolved.  Otherwise, you're going to have |
| 00:27:08 | 15 | to resolve it for me.  That's all I'm saying. |
| 00:27:10 | 16 | So let me look at my calendar, and I will |
| 00:27:21 | 17 | give you the following options:  Next Wednesday's our |
| 00:27:45 | 18 | regular docket date, but I can take all the time we need |
| 00:27:49 | 19 | on the 11th, which is a Thursday.  You want a separate |
| 00:27:53 | 20 | date?  I don't mind giving you a separate time slot. |
| 00:27:56 | 21 | Thursday get your witnesses here, and we'll know that |
| 00:27:58 | 22 | that's exactly when they need to be here. If you want |
| 00:28:05 | 23 | the 11th, that will give my team -- I say my team, that |
| 00:28:11 | 24 | is, the state's team plenty of time to go out and do |
| 00:28:18 | 25 | their due diligence with the hospital staff, to find out |

00:28:22   1    if they are insistent on radiation or whether or not we

00:28:26   2    have some additional time we can take on that decision,

00:28:30   3    whether or not she didn't need it at all.  But remember,

00:28:35   4    coming in here with naked pleadings without proof isn't

00:28:40   5    going to get me past the hurdle of a probable outcome

00:28:47   6    that you're going to, quote, win.  I don't think win,

00:28:52   7    lose in that sense; but Mr. And Mrs. Brown, this is the

00:28:55   8    same thing I'd be telling your lawyers, if you were

00:28:58   9    represented.  You need evidence. You need to convince me

00:29:03  10    that she didn't need radiation.  That's the only focus

00:29:06  11    we need to be talking about.  I assume that's why you're

00:29:09  12    here.  Prevent radiation.

00:29:13  13              MR. BROWN:  If the doctor writes a

00:29:15  14    statement, would that be good enough; or does he have to

00:29:18  15    be here.

00:29:18  16              THE COURT:  It just won't be good enough.  I

00:29:20  17    mean now that we're going to play this by the formal

00:29:24  18    rules of pleading and judge, you don't have authority

00:29:27  19    and all the -- I mean, as long as we're in that sandbox,

00:29:30  20    now, then we're in that sandbox; but where I'm willing

00:29:37  21    to hedge, where I'm willing to hedge in your favor on

00:29:40  22    this is the ad litem, guardian and attorney ad litem,

00:29:44  23    have free rein at talking to the officials at the

00:29:49  24    hospital.  If they say or they're ambivalent about it,

00:29:54  25    we'll probably move past radiation.

| | | |
|---|---|---|
| 00:29:57 | 1 | MR. BROWN:  You're talking about the Austin |
| 00:30:00 | 2 | Cancer Center, correct?  That's the radiation people. |
| 00:30:04 | 3 | MS. BROWN:  Talking about the doctors that |
| 00:30:05 | 4 | are at Dell Hospital. |
| 00:30:07 | 5 | THE COURT:  The doctors at Dell. |
| 00:30:14 | 6 | MR. BROWN:  Radiologists who do radiation |
| 00:30:14 | 7 | would be the ones that determine if she needs radiation. |
| 00:30:17 | 8 | THE COURT: If that radiologist doesn't think |
| 00:30:20 | 9 | there's a need for it after reviewing everything, bring |
| 00:30:22 | 10 | the doctor in.  There is the phone.  We can do a phone. |
| 00:30:27 | 11 | There's no fight, here, but I'm treating this injunction |
| 00:30:31 | 12 | only as to stop CPS, the state from going forward with |
| 00:30:38 | 13 | radiation.  That's how I'm treating that hearing, but |
| 00:30:41 | 14 | the irony, here, is no one's fighting.  I mean there's |
| 00:30:44 | 15 | not really a big fight, here.  We're all just going over |
| 00:30:47 | 16 | the same presumption that that's the protocol to be |
| 00:30:51 | 17 | followed with this kind of cancer.  Can't re-visit the |
| 00:30:55 | 18 | fact that you're saying she never had cancer.  Okay. |
| 00:30:58 | 19 | You want to tell your daughter all that, that's fine. |
| 00:31:01 | 20 | Whatever you-all want to do as parents. |
| 00:31:04 | 21 | MR. BROWN:  We want to listen to the |
| 00:31:06 | 22 | biopsies. |
| 00:31:08 | 23 | MS. BROWN:  Judge, if I could interject, |
| 00:31:10 | 24 | I've been told there's only one case on next Wednesday's |
| 00:31:12 | 25 | docket; so if you wanted to start next Wednesday,  we |

| | | |
|---|---|---|
| 00:31:15 | 1 | can do that. |
| 00:31:18 | 2 | MS. WATSON:  I'm in Harris County on two |
| 00:31:19 | 3 | cases. |
| 00:31:20 | 4 | THE COURT:  Next Wednesday.  So you couldn't |
| 00:31:21 | 5 | do it anyway, right.  Thursday, 9:00 o'clock. |
| 00:31:24 | 6 | MS. WATSON:  I can do Thursday. |
| 00:31:26 | 7 | MS. BROWN:  Okay. |
| 00:31:27 | 8 | THE COURT:  Thursday, 9:00 o'clock.  Now, |
| 00:31:28 | 9 | having said that, I really, I really would prefer not to |
| 00:31:33 | 10 | have radiation, and I said this two weeks ago.  And I |
| 00:31:37 | 11 | continue to say it.  I've been asking the parents to |
| 00:31:42 | 12 | bring me some contraindicated evidence to stop this once |
| 00:31:50 | 13 | and for all.  I'm still waiting; but if your -- if the |
| 00:31:56 | 14 | doctors who are presently treating her say King's X, |
| 00:32:01 | 15 | that will be okay with me.  That will be okay with me. |
| 00:32:07 | 16 | I prefer her not to go through radiation.  Likely would. |
| 00:32:11 | 17 | I prefer the treatment model to end.  I would love the |
| 00:32:14 | 18 | treatment model to end at the end of chemo.  I do.  I |
| 00:32:19 | 19 | don't want -- I would prefer that.  That's my |
| 00:32:21 | 20 | preference, but I can't talk the doctors into something |
| 00:32:23 | 21 | that's my preference.  And that's the family's |
| 00:32:28 | 22 | preference, not to have radiation, so okay.  All right. |
| 00:32:36 | 23 | Thursday, 9:00 o'clock. |
| 00:32:41 | 24 | MS. BROWN:  I guess in this courtroom. |
| 00:32:43 | 25 | THE BAILIFF:  Another courtroom.  We're busy |

```
 1                    REPORTER'S RECORD

 2                     VOLUME 1 OF 1

 3          TRIAL COURT CAUSE NO. 12-DCV-197,806

 4

 5    _____

 6    In THE INTEREST OF         IN THE DISTRICT COURT OF

 7                               FORT BEND COUNTY, TEXAS

 8    AERIAL BROWN                387TH JUDICIAL DISTRICT

 9                          ,

10

11

12    October 11, 2012

13    _____

14

15

16

17          On the 11th day of October 2012, the
      above-styled cause of action came on to be heard in the
18    387th Judicial District Court, the Honorable ERIC ANDELL
      presiding; and the following proceedings were held in
19    Richmond, Fort Bend County, Texas:
            Proceedings reported by COMPUTERIZED STENOTYPE
20    MACHINE; Reporter's Record produced by COMPUTER-ASSISTED
      TRANSCRIPTION.

21

22        WINONA GIBSON WILLIAMS, Texas CSR #692
                     Court Reporter
23                    P.O. Box 988
                 Brazoria, Texas  77422
24                   (979) 798-9651

25
```

1                              APPEARANCES

2      ATTORNEY FOR PETITIONER      RESPONDENTS

3
       SALLY BROWN                  ERIC BROWN, Pro se
4      Assistant County Attorney    ANGIE BROWN, Pro se
       301 Jackson Street           3111 Shiloh Dr.
5      Richmond, Texas 77469        Missouri City, Texas  77459
       Phone: (281)342-3411         Phone: (281) 914-6976
6

7

8      ATTORNEY AD LITEM

9      TEANA WATSON
       Attorney at Law
10     One Sugar Creek Center Blvd.
       Suite 1045
11     Sugar Land, Texas  77478
       Phone: (281)491-4838
12

13

14

15

16

17

18

19

20

21

22

23

24

25

CHRONOLOGICAL INDEX

VOLUME 1

|                                          | Page  |
|------------------------------------------|-------|
| Motion to continue                       | 5     |
| Motion Denied                            | 6     |
| Stay Pending Writ                        | 7     |
| Writ Denied                              | 7     |
| Court's Inquiry                          | 7     |
| Ad litem's Response                      | 8     |
| Witness Sworn                            | 15    |

Witnesses:

Dr. Brown

| Direct Examination - Ms. Brown           | 15,22 |
| Inquiry - Mrs. Brown                     | 17    |
| Cross-Examination - Mr. Brown            | 17    |
| Court's Examination                      | 17    |
| Cross-Examination - Ms. Watson           | 23    |
| Court's Ruling                           | 23    |

23:59:42  1  going to give you a hypothetical set of facts that are

23:59:45  2  in evidence, okay.

23:59:46  3         DR. BROWN:  Yes, sir.

23:59:46  4         THE COURT:  At a time when we were beginning

23:59:48  5  this case, at a time when I had to make the critical

23:59:51  6  decision of whether or not to remove the medical

23:59:54  7  treatment protocol from the parents and hand it over to

23:59:56  8  the state, we were told that the child would die if she

23:59:59  9  did not receive chemotherapy.  That's what we were told.

00:00:02 10  That's facts in evidence.  We were told that, that she

00:00:08 11  had to begin that ASAP.  We were told that there was

00:00:12 12  other complications that if we didn't, because the tumor

00:00:15 13  was creating other issues.  And we -- I bought into all

00:00:19 14  that.  That was the only evidence we had.  The parents

00:00:21 15  presented no contrary evidence, and so I only had one

00:00:24 16  set of facts to go on.  I allowed the hospitals in to

00:00:30 17  begin the chemotherapy.

00:00:32 18         We were then told the chemotherapy was very

00:00:35 19  successful and that the tumor was removed.  We were also

00:00:38 20  told that the -- that there was no more cancer.  That's

00:00:44 21  fact in evidence.  So I'm just trying to use a hypothet

00:00:50 22  based upon any parent.

00:00:51 23         If I came in to you, doctor, and I said to

00:00:55 24  you, My daughter is cancer free based upon -- I won't

00:00:59 25  use the personal pronoun but your generic pronoun, based